**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | Case No. CV 05-329-S-LMB |
| IDAHO HUMAN RIGHTS COMMISSION, | ) ) | |
| Intervenor Plaintiff, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| THE BURRITO SHOPPE LLC, d/b/a SQUEEZERS GIANT BURGERS, and ALLIED FOOD SERVICE, INC., d/b/a SQUEEZERS, | ) ) ) ) | |
| Defendant and Intervenor Defendant. | ) ) | |
| _____ | ) | |

Currently pending before the Court is Plaintiffs' joint Motion to Pierce the

Corporate Veil (Docket No. 120) and Defendants' Motion to Continue Trial Date (Docket

No. 133).[1]  In the interest of avoiding further delay and otherwise being fully advised, the

Court enters the following Order.

_____

[1]  Defendants' Motion for Order Compelling Discovery and Sanctions (Docket No. 130) is not yet ripe for review.

**MEMORANDUM DECISION AND ORDER -1-**

# I.

## PROCEDURAL HISTORY

On March 3, 2008, a pre-trial scheduling conference was held and a trial date was set for July 14, 2008.  *See* Docket Nos. 116, 117.

On April 8, 2008, Plaintiffs filed a Motion for Leave to File Motion to Pierce the Corporate Veil (Docket No. 119) and the instant Motion to Pierce the Corporate Veil (Docket No. 120).  The Motion for Leave to File the Motion to Pierce the Corporate Veil was granted on May 7, 2008.  *See Order* (Docket No. 125).

On May 22, 2008, Defendants filed a Motion to Continue the Trial Date (Docket No. 133).  After conducting a review of his calendar, Defendants' counsel discovered that he will be out of town the week of July 14, 2008 and his co-counsel will be unavailable on the first day of trial, July 14, 2008.  *Affidavit of Shane O. Begoechea in Support of Motion to Continue Trial Date*, p. 3 (Docket No. 134); *Affidavit of Erika Birch*, ¶ 4 (Docket No. 148).  Defendants' counsel also learned that his client, James S. Dorsey ("Dorsey"), a restaurant owner, has problems with the trial date, because of issues affecting his ability to run the restaurant in mid-July.  It appears that Dorsey's fiancee is on maternity leave scheduled to return to the office in June 2008; the restaurant manager is also on maternity leave until late July 2008; Dorsey is hosting an annual fundraiser on July 17, 2008; and Dorsey was injured in a motorcycle accident on May 5, 2008.  *Affidavit of James S. Dorsey*, ¶¶ 2-3 (Docket No. 135).  Finally, at the June 3, 2008 hearing on the pending motions, Defendants' counsel represented that Dorsey's brother, both a manager at the restaurant and a key defense witness, is unavailable due to severe mental health problems.

**MEMORANDUM DECISION AND ORDER -2-**

*Supplemental Affidavit of Shane O. Bengoechea in Support of Motion to Continue Trial Date*, ¶ 5 (Docket No. 147).

In addition to the foregoing, Defendants have filed an Amended Motion to Compel and for Sanctions (Docket No. 130). It is undisputed that Plaintiffs did not provide to Defendants certain relevant discovery requests, including medical records for Audrey Powers, the person on whose behalf the instant lawsuit was filed. At the hearing on June 3, 2008, Plaintiffs' agreed to provide this discovery to Defendants on or before June 6, 2008.

## II.

## MOTION TO PIERCE THE CORPORATE VEIL

Plaintiffs' Motion to Pierce the Corporate Veil is granted in part and denied in part. The Motion will be granted to the extent there is sufficient evidence to bring the issue before the jury. The motion is denied to the extent that the Court will not rule on the motion as a matter of law but will allow the jury to make that determination provided that Defendants are found liable for the conduct alleged in Plaintiffs' complaints.

Plaintiffs seek to pierce the corporate veil to hold Dorsey, the manager and sole member of The Burrito Shoppe LLC[2] and president and sole owner of Allied FoodService Inc.[3],

---

[2]  *See Memorandum in Support of Defendants Motion to Dismiss*, p. 11 (Docket No. 39) ("Mr. Dorsey was the only member [of The Burrito Shoppe, LLC] . . . ."); Ex. A, *Affidavit of David W. Hammons* (Docket No. 40) (Articles of Dissolution signed by James Dorsey as manager of The Burrito Shoppe).

[3]  See Exs. D, G *Affidavit of David W. Hammons* (Docket No. 40) (Articles of Incorporation show corporation authorized to issue one share) (Application for Employer Identification Number shows James S. Dorsey as the name of principal officer, general partner, grantor, owner, or trustor).

**MEMORANDUM DECISION AND ORDER -3-**

personally liable for any judgment against Defendants.  The general rule is that the owners of a

corporation are not personally liable for a corporation's contracts or debts.  *See Barlow's Inc. v.*

*Bannock Cleaning Corp.*, 103 Idaho 310, 314-15, 647 P.2d 766, 770-71 (1982).  "Piercing the

corporate veil is '[t]he judicial act of imposing personal liability on otherwise immune corporate

officers, directors, and shareholders for the corporation's wrongful acts."  *VFP VC v. Dakota*

*Co.*, 141 Idaho 326, 335, 109 P.3d 714, 723 (2005) (quoting BLACK'S LAW DICTIONARY

1184 (8th ed. 2004)).  "The theory allows the fact finder to disregard the corporate form, thereby

making individuals liable for corporate debts."  *Id.* (citing *Minich v. Gem State Developers, Inc.*,

99 Idaho 911, 917, 591 P.2d 1078, 1084 (1979)).  Such a determination should be made

"cautiously and only where circumstances justify it."  *Jolley v. Idaho Securities, Inc.*, 90 Idaho

373, 381, 414 P.2d 879, 877 (1966).

Two basic elements are required in order to pierce the corporate veil: (1) unity of interest

and ownership such that the separate personalities of the corporation and the individual no

longer exist and (2) if the acts are treated as those of the corporation an inequitable result will

follow.  *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 601, 514 P.2d 594,

596 (1974).  While these two elements must be shown, "the conditions under which a corporate

entity may be disregarded vary according to the circumstances of the case.  *Id.*

**A.     Unity of Interest and Ownership**

In determining the unity of interest and ownership element, there are several factors to

consider.  "For example, was the sole shareholder acting as president of the corporation; was

there a lack of corporate formalities, such as directors' meetings; did the shareholders fail to

submit corporate contract and inventory revisions to the board of directors; and were business

**MEMORANDUM DECISION AND ORDER -4-**

transactions completed without approval by any director or officer of the corporation."

*Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).  Again, these

factors are not exhaustive or conclusive "because the conditions under which a corporate entity

may be disregarded vary according to the circumstances of the case."  *Id.*

The evidence in support of the unity of ownership and interest element comes largely from

Dorsey's deposition testimony.  This testimony includes direct testimony that Squeezers' assets

were used to pay Dorsey's personal expenses directly and with Squeezers' checks.  The

testimony is summarized below:

1. Dorsey testified that two people handle the bookkeeping and accounting for Squeezers: (1) David Hammond, CPA, and (2) Rhonda Moulin.[4]  According to Mr. Dorsey, Ms. Moulin pays the bills with business checks.[5]

2. Dorsey does not take a salary from his businesses.[6]  Rather, he takes "draws" from the company account and accounts for that later on his taxes.[7]

3. The draws are regular, monthly payments Ms. Moulin makes for Dorsey on the company account for expenses related to Dorsey's mortgages, cars, and car insurance.[8]

---

[4]  *See* Ex. A. to Steven L. Olsen Affidavit, *November 6, 2007 Deposition of James Dorsey* ("Dorsey Deposition"), 37:12-38:7, 41:18-23.

[5]  *Id.* at 43:9-14 ("When she comes to the office the bills are laid out.  Her job is to pay the bills, not to ask questions.  If she feels that the bill is a draw, she will apply it to a draw.  If she feels it is a utility bill for the restaurant, she will apply it accordingly.")

[6]  *Id.* at 39:16-22.

[7]  *Id.* at 40:1-11.

[8]  Ex. A *Supplemental Affidavit of Robert M. Adelson in Support of Plaintiffs' Motion to Pierce the Corporate Veil*, (additional pages from Dorsey Deposition), 47:8-10; Dorsey Deposition, 49:2-19):

**MEMORANDUM DECISION AND ORDER -5-**

Dorsey also testified in his deposition that he frequently pays his business bills with personal funds.[9]  This testimony suggests a blurring of lines between personal and business accounts.

In addition, Dorsey's testimony at the deposition seemed to obscure the lines between personal and corporate accounts.  At one point he stated in his deposition, "When I say 'my bills,' [I mean] the company bills."[10]

With regard to corporate formalities, Dorsey was the sole owner and manager of The Burrito Shoppe, LLC and the sole owner and president of Allied Food Service, Inc.  Dorsey testified that he does not conduct regular corporate meetings[11] and cannot remember conducting a  meeting since he opened the business in 2003.[12]

While it is true, as Defendants argue, that Mr. Dorsey could not hold corporate meetings "with himself," the fact that he has been the sole owner of these businesses demonstrates that Mr. Dorsey exercised "absolute control" over the management and operation of the Squeezers restaurants.  *See Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho at 601, 514 P.2d at 596.  *Hutchison v. Anderson*, 130 Idaho at 940, 950 P.2d at 1279.  This is one of the factors courts must consider when determining the unity of interest and ownership element.  *Id.*

---

Q.  So Rhonda is writing checks out of your business account for the mortgage, the car payments, and the insurance on the cars; is that correct?

A.  That's correct.

[9]  Dorsey Deposition, 28:1-9.

[10]  *Id.* at 44:19-20.

[11]  *Id.* at 56:25-57:9

[12]  *Id.* at 57:18-25.

**MEMORANDUM DECISION AND ORDER -6-**

In addition to Dorsey's testimony, Audrey Powers, submitted an affidavit alleging that Dorsey took money from the cash register to pay the employees for performing "stunts," such as drinking a milk shake with onions and eating a hamburger saturated with mustard.[13]  Powers also alleges that Dorsey paid her from the cash register in exchange for pulling down her pants and underwear.  *Id.* at ¶ 5.  Dorsey disputes such allegations.

Dorsey's deposition testimony alone strongly suggests that there was a unity of interest and ownership between Dorsey and The Burrito Shoppe, LLC and Allied Food Service, Inc.  In addition to Dorsey's direct testimony, the over-all tenor of his deposition with regard to how expenses are paid and for what purpose is confusing and seemingly inconsistent, perhaps suggesting that Dorsey himself is confused regarding the line between his personal and corporate accounts.  *See Baker v. Kulczyk*, 112 Idaho 417, 732 P.2d 386 (Ct. App. 1987) (holding use of the singular pronoun "I" or "my" in testimony exhibited a disregard for the corporate entity).

This conclusion is not affected by Defendants' argument that Dorsey accounted for the personal draws on his taxes.  The "draws" took money from the business assets and directed them to Dorsey's personal affairs.  While this blurring of business and personal expenses is not *per se* illegal and may have been reported appropriately for tax purposes, it still supports an argument for piercing the corporate veil.  The bottom line is that Dorsey's testimony is evidence that he treated his businesses as extensions of his private affairs, and such treatment may have consequences when he attempts to use the business entities as a shield from liability.

---

[13] *Audrey Powers Affidavit,* ¶¶ 6-7 (Docket No. 126).

**MEMORANDUM DECISION AND ORDER -7-**

**B.     Inequitable Result**

The second element requires a "showing that, if the acts are treated as those of a corporation, an inequitable result will follow or that it would sanction a fraud or promote injustice." *Id.* Undercapitalization is a consideration when determining this second element and courts consider whether an attempt to collect on a judgment against the corporation would be futile. *Id.* at 937, 950 P.2d at 1280.

Again, there is evidence in the record that strongly suggests Plaintiffs may be able to establish this element. The original Defendant in this action, The Burrito Shoppe LLC dba Squeezers Giant Burgers, was dissolved on March 10, 2006. *See* Ex. A, *Affidavit of David W. Hammons* (Docket No. 40). On April 3, 2006, Defendant The Burrito Shoppe LLC filed a Motion to Dismiss (Docket No. 39) on the basis that the corporation had been dissolved and "[e]ven if a judgment were obtained against The Burrito Shoppe, LLC . . . there would be no assets of value to obtain without liens or loans against those assets." *Affidavit of David W. Hammons*,¶ 6 (Docket No. 40).

This procedural history suggests that Defendants have a propensity to use the corporate form as a shield from liability. Nonetheless, the evidence, especially that regarding Defendants' financial condition, is stale. For the purposes of this motion to pierce the corporate veil, the trier of fact must determine whether an inequitable result would follow if Mr. Dorsey is not held liable for any acts assigned to the corporate Defendants. Plaintiffs argue that the inequitable result will follow, because Defendants will not honor a judgment entered against them. Based on the evidence advanced in support of this motion, the Court cannot determine, as a matter of law, that this would be the case.

**MEMORANDUM DECISION AND ORDER -8-**

C.     Issue Reserved for the Jury and Bifurcation

In Idaho, piercing the corporate veil is a question of fact generally reserved for the trier of

fact.  *See Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 556, 165 P.3d 261, 270 (holding trial

court erred by failing to give jury instruction re piercing corporate veil where jury instructions

correctly stated the law and were supported by a reasonable view of the facts); *VFP VC v.

Dakota Co.*, 141 Idaho 326, 335, 109 P.3d 714, 723 (2005) (holding "district court properly

allowed [Plaintiff] to assert its theory under piercing the corporate veil to the jury").  *Cf.

Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct.App. 1997) (upholding

district court finding re piercing the corporate veil); *Surety Life Ins. Co. v. Rose Chapel

Mortuary, Inc.*, 95 Idaho 599, 514 P.2d 594 (upholding district court decision where issue

submitted to judge on stipulated facts).  While there may be circumstances in which it is

appropriate for a court to make such a determination, such is not the case here.  Because

Dorsey's testimony is confusing and, at times, inconsistent, it would be inappropriate at this time

for the Court to make a final determination regarding the unity of interest and ownership

element.  Similarly, the evidence suggesting that Allied Food Service, Inc. cannot satisfy a

judgment against it is stale and does not clearly demonstrate that an inequitable result will follow

if Dorsey is not held liable.  Therefore, the Court cannot conclude, as a matter of law and based

on the existing record, that the corporate veil should be pierced.  Rather, the Court will reserve

this determination for the jury provided a verdict is returned in Plaintiffs' favor on at least one of

the causes of action pled in their complaints.

In addition, because the evidence in support of the Motion to Pierce has the potential to

prejudice a liability finding against Defendants and will not be necessary unless liability is

**MEMORANDUM DECISION AND ORDER -9-**

found, the trial will be bifurcated.  The jury will not resolve the issue of whether the corporate

veil should be pierced unless and until the jury determines that Defendants are liable for the

conduct alleged in Plaintiffs' complaints.

## III.

## MOTION TO CONTINUE TRIAL

Defendants seek to move the trial date from July 14, 2008 to sometime in September 2008.

"The decision to grant or deny a requested continuance lies within the broad discretion of the

district court. . . ."  *U.S. v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985), *amended,* 764 F.2d 675.

In making such a determination, four factors are considered: (1) the diligence of the moving

party; (2) if the need for the continuance can be met by a continuance; (3) the extent to which a

continuance would inconvenience the court and other parties; and (4) the extent to which the

moving party might suffer harm if the continuance is denied.  *Id.*; *see also Sony v. Danjag*, 263

F.3d 942, 961 (9th Cir. 2001) (finding of prejudice required in order to overturn trial judge's

decision to deny continuance).

The Court is not fully satisfied that Defendants have been diligent in moving this case

forward, especially with regard to outstanding discovery issues and considering the time that

passed between the date of the hearing setting the trial date, March 3, 2008, and the date this

motion was filed, May 22, 2008.  In addition, it is not clear that the continuance will address the

issues raised by Defendants.  Dorsey, as a small business owner, may continue to find it difficult

to make time for a trial.  Similarly, there is no way to guarantee that Dorsey's brother will have

recovered with the passage of a month's time.  Nonetheless, the continuance will be granted,

because there is a risk of prejudice to Defendants posed by Plaintiffs' late-filed discovery

**MEMORANDUM DECISION AND ORDER -10-**

responses and the fact that a key defense witness is currently unavailable due to serious health

reasons.  Further, the continuance will pose but a slight inconvenience to the Plaintiffs.

Therefore, a continuance will be granted and the time set for this trial to begin will be extended

from July 14, 2008 to August 25, 2008.

      The Court grants this continuance with some reservation and will not consider any

additional requests for extending the time for trial.  The reluctance stems, in part, from troubling

issues raised by Defendants' briefing.  For example, there is no evidence or basis to support

Defendants' counsel's statement that he did not receive adequate notice of the telephonic

scheduling conference held on March 3, 2008.  The Court's electronic filing system, CM/ECF,

indicates that a Docket Text Notice of the telephonic scheduling hearing was sent to counsel's

correct e-mail address.  *See Docket Text Notice* (Docket No. 115).  Thus, the Docket Text Notice

(Docket No. 115) is part of the official court record in this case and the e-mail notification

constitutes electronic notice of the hearing.  *See* Dist. Idaho Loc. Civ. R. 5.1(a),(h).  In addition,

the CM/ECF system archives indicate that the message was successfully delivered on February

11, 2008.  Therefore, the Court must conclude that any error occurred after the e-mail was sent to

defense counsel's office.

      Moreover, Defendants waited over two months before filing the Motion to Continue Trial

Date (Docket No. 133).  The telephonic scheduling conference took place on March 3, 2008 and

the Motion to Continue (Docket o. 133) was filed on May 22, 2008.  Clearly, Defendants could

have notified the Court earlier of the alleged scheduling problems.  The delay undermines any

sense of urgency one might expect to accompany a request to vacate the trial date and reflects a

**MEMORANDUM DECISION AND ORDER -11-**

lack of diligence.  These issues have now been addressed and the Court will not entertain further requests for time extensions.

In sum, the Court anticipates bifurcating the trial and allowing the jury to consider the issue of piercing the corporate veil only if the jury first finds Defendants' liable for any wrong-doing.  The date set for this trial is continued and will commence on Monday, August 25, 2008, at 9:00 a.m.

**V.**

**ORDER**

In accordance with the foregoing:

1.    The Motion to Pierce the Corporate Veil (Docket No. 120) is GRANTED in part and DENIED in part;

2.    The Motion to Continue Trial Date (Docket No. 133) is GRANTED;

3.    A jury trial will commence on Monday, August 25, 2008 at 9:00 a.m;

4.    A pretrial conference will be held on Friday, August 15, 2008 at 10:00 a.m.; and

5.    No further continuances of the trial will be allowed.

DATED:  **June 10, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**ORDER- 12**